**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON**

IN RE:

**LISA LANE GOBIN**

**DEBTOR**                                                                                           **CASE NO. 05-52436**

**LISA L. GOBIN**
**a/k/a LISA L. LOWE**                                                                      **PLAINTIFF**

**VS.**                                                                                                   **ADV. NO. 05-5130**

**COLLEGE ACCESS NETWORK**                                                    **DEFENDANT**

**MEMORANDUM OPINION**

This adversary proceeding is before the court following trial on March 28, 2006. The Findings of Fact and Conclusions of Law herein are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

**FINDINGS OF FACT:**

The complaint (Document # 1) was brought by the debtor *pro se* against College Access Network ("CAN") pursuant to 11 U.S.C. § 523(a)(8) for a determination that the debtor's student loan debt to CAN should be discharged because repayment will impose an undue hardship on her and her two dependents because of the debtor's major, chronic depression.

The parties provided the court with a joint trial notebook containing copies of

certain pleadings filed in the record and all exhibits to be used at trial. Copies of pleadings are behind tabs labeled 1 through 7. For example, the debtor's Trial Brief which was filed in the record as Document # 31 is designated as tab 6. Plaintiff-debtor's trial exhibits are designated as tabs 8 through 48, and Defendant CAN's, as tabs 49 through 52. CAN's objections to the admissibility of exhibits at tabs 16 and 18 through 21 were overruled at trial. Exhibits at tabs 22 through 24 were included in the trial record on a limited basis. Exhibits are referred to in this Memorandum Opinion by tab numbers. The debtor's deposition was taken by CAN on December 19, 2005, and was admitted into evidence at trial as Defendant's Exhibit 52 in order to correspond with the tab number where it can be found in the trial notebook. The Findings of Fact herein are a compilation of facts gathered at the trial and the deposition.

According to the records produced for trial as CAN's exhibits at tabs 50 and 51, the original principal amount of the debtor's student loan debt was $20,565.53, and the total outstanding balance due as of December 6, 2005, including interest and "projected cost," was $70,789.85.

The debtor *pro se* filed a petition in this court for relief under chapter 7 of the U.S. Bankruptcy Code on June 29, 2005. Her schedules show no real property; personal property valued at $750, all of which is claimed as exempt; and two unsecured nonpriority claims totaling $71,282.85, namely, two student loan debts, one with U.S. Department of Education in the amount of $682.85 and another with CAN in the amount of $70,600. (Document # 1, main case). No proof of claim has been filed by or for these creditors in the debtor's bankruptcy case. The debtor applied to pay the filing fee in four installments of $52.25. (Document # 2, main case). Her application was granted

2

(Document # 4, main case), and the final installment payment was made on August 15, 2005.

The debtor *pro se* commenced this adversary proceeding on September 29, 2005, against CAN and U.S. Department of Education.  On November 7, 2005, Judgment Regarding the United States was entered, in which U.S. Department of Education agreed to entry of the nondischargeability judgment against the debtor in the total amount of $600 for student loans debts owed to it by her.  (Document # 9).

On December 21, 2005, the debtor filed in this adversary proceeding amended Schedules I and J itemizing current income and expenses for herself and her household, as ordered by the court.  (Document # 19).

At time of trial, the debtor was a forty-one year old female who is divorced and has two children, a sixteen-year-old daughter and a two-year-old son.  The three of them live with the children's father, age forty-four, who states by affidavit offered at tab 15 that he and the debtor have agreed to a living arrangement whereby she pays $300 per month in rent "in lieu of child support she normally receives," as well as paying for food and half of the cost of "necessary utilities," and that she will move "when financially able."  Current income and expenses filed by the debtor for herself and the household show that she has been unemployed since December 31, 2004, when her employment as a secretary/assistant ended, that the children's father is employed building storage containers and is looking for a second job, and that her daughter is employed part time as a cashier.

The record shows that the debtor has no income but has monthly expenses of $971.50 which includes rent, utilities, and food provided by the children's father,

transportation provided by the children's fraternal grandmother, and a cell phone provided by the debtor's sister. The daughter's monthly income is $270, from part time employment as a cashier where she has been employed for less than a year. The debtor estimates that her daughter's expenses are $130 a month. The father's monthly income totals $1838, and he has monthly expenses totaling $3040.50, which includes credit card payments of $400, for a monthly net income of minus $2,202.50. Counsel for CAN did not contest any of the itemized expenses or income shown by the debtor, and none appear out of the ordinary to the court.

The debtor and a representative of CAN were the only witnesses at trial. In other words, the debtor did not produce expert medical testimony at trial. The court finds the debtor's testimony credible.

The debtor testified that she graduated from a Maysville, Kentucky high school in 1983, where she made "straight A's" and graduated early. After high school, when she was eighteen years old, she attended community college in Maysville for two years then transferred to the University of Kentucky in Lexington, Kentucky ("UK"), where she attended "on and off" during the eight years from 1986 to 1994. Having expected to graduate in 1993 with a major in communications, the debtor stated that she left the university in 1994 upon deciding that she was "wasting time and money." Although having been an "A" student in high school, when she left UK the debtor's grade point average was around 2.0. The debtor's daughter would have been about four years old at the time, and the debtor attended UK as a full-time student while working as a waitress. She states that she needs between sixteen and twenty-three credit hours in order to graduate from the University of Kentucky.

In 1983 the debtor began having symptoms of not being able to concentrate, making mistakes, wanting to be alone, crying, and thoughts of suicide.  In 1993, while a student at UK, she was diagnosed with depression and given medications but stopped taking them.  In 1994 she was treated again and given Prozac.

During 1993 to 1995 the debtor worked in a doctor's office in Lexington, Kentucky processing claims for insurance benefits.  That job ended when the doctor's office closed.  In 1995 the debtor moved to Albuquerque, New Mexico to live with her sister.  While there she worked as a receptionist and was taking Prozac.  During this year the debtor decided that because of her sister's behavior, she and her daughter should leave.  Her sister was later diagnosed as being bipolar.  In 1996 the debtor moved to California where she worked as a receptionist, married, and became pregnant.  She, her husband, and her daughter then moved to Redwoods, California where they lived with her husband's parents and she worked as a cashier in a gift shop.  She quit taking Prozac because of her pregnancy.  However, she lost the baby at seven months, became even more depressed, and began taking Prozac again.  The debtor testified that her husband was an alcoholic and that with the help of her children's father, she and her daughter moved back to Kentucky.  After returning to Kentucky, in 1998 and 1999, she worked as an administrative assistant to her children's fraternal grandmother for the family's corporation and as a salesperson in a local bookstore.  In 2000 and 2001 when her services were no longer needed at the family corporation and when she began having symptoms again, she became unemployed.  In 2003 and 2004 she again worked as an assistant for the family business, while at home.  The debtor was unemployed for 2005 and is currently unemployed.  Income tax returns filed at tabs 34

5

through 37 show her adjusted gross income for the years 1999, 2003, and 2004 as $10,305, $4,182, and $5,576, respectively.

Since returning to Kentucky, the debtor has been a patient at Bluegrass Comprehensive Care, where she pays "on a sliding scale" according to her income. For over a year now, the debtor has been taking Lexapro and Wellbutrin for depression and anxiety, with periodic change to the dosage.

The debtor testified that since she was first diagnosed with depression in 1983, her depression keeps coming back and that the medications never control it completely. She has, however, seen some improvement over the last year and a half of being with her present physician. She states that her condition is long-standing and that she has a family history of depression as well as other mental health problems, such as schizophrenia, drug addiction, and alcoholism. She testified that she has immediate family members who have made attempts at suicide, have been institutionalized for mental problems, have been declared disabled, and have been diagnosed as bipolar. The debtor stated at trial, "My fear is that I will be like my mother." She also stated, "I want to be able to function better." The debtor testified that she has read "several books" about depression.

According to her Social Security statement at tab 38, the most money the debtor earned was $15,672 in 1998, which is only one of two times in her life that she has been above the poverty line.

During the loan period the debtor has obtained deferments, forbearance, and, according to CAN's records, has made minimal payments on the loan. The debtor does not remember the dates these payments were made, but states they would have been

made either by her borrowing the money from one of her sisters or by her not paying other bills.  When the debtor was no longer able to make payments, the loan went into default.

The debtor acknowledged at trial that payments under the ICRP would be based on her income at 20% above the poverty line and that at the end of the twenty-five year period under ICRP, the debt would be discharged from CAN.  However, the debt discharged would include any interest and costs and would be recognized as a tax consequence to the debtor by the Internal Revenue Service.

**CONCLUSIONS OF LAW:**

Prior to its amendment, effective October 17, 2005, 11 U.S.C. § 523(a)(8) permitted discharge of a student loan debt if repayment "will" impose an undue hardship on the debtor and her dependents.

The Sixth Circuit has adopted the *Brunner* test for determining whether repayment of a student loan will impose an undue hardship on a debtor in bankruptcy. *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005); *see Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987).  The *Brunner* test requires the debtor to show: 1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if required to repay the loans; 2) that additional circumstances exist which indicate the state of affairs is likely to persist for a significant portion of the repayment period; and 3) that the debtor has made good faith efforts to repay the loans.  The debtor must show

that she has satisfied all three prongs of the *Brunner* test in order to obtain discharge of a student loan debt under 11 U.S.C. § 523(a)(8).   She has the burden of proof under Section 523(a)(8), *Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677 (6th Cir. 2005), by a preponderance of the evidence, *Grogan v. Gardner*, 498 U.S. 279, 111 S. Ct. 654 (1991).

CAN concedes that the first prong is not at issue here, but asserts that the debtor has not met her burden of proof as to the second and third prongs of the *Brunner* test.

The National Institute of Mental Health ("NIMH") states that major depression is one of the three most common types of depressive disorder and can vary in the number of symptoms, their severity, and persistence.  Major depression is described as:

> manifested by a combination of symptoms . . . that interfere with the ability to work, study, sleep, eat, and enjoy once pleasurable activities.  Such a disabling episode of depression may occur only once but more commonly occurs several times in a lifetime.

Symptoms are persistent sad, anxious, or "empty" mood; feelings of hopelessness, pessimism, guilt, worthlessness, helplessness; loss of interest or pleasure in hobbies and activities that were once enjoyed, including sex; decreased energy, fatigue, being "slowed down"; difficulty concentrating, remembering, making decisions; insomnia, early-morning awakening, or oversleeping; appetite and/or weight loss or overeating and weight gain; thoughts of death or suicide or attempts at suicide; restlessness, irritability; and persistent physical symptoms that do not respond to treatment, such as headaches, digestive disorders, and chronic pain.  The NIMH states that in some families, major depression seems to occur in generation after generation and that women experience depression about twice as often as men, suggesting that hormonal

changes may contribute to this increased rate in women, such as menstrual cycle changes, pregnancy, miscarriage, postpartum period, pre-menopause, and menopause. "Many women also face additional stresses such as responsibilities both at work and home, single parenthood, caring for children and for aging parents." Nat't. Inst. of Mental Health, *Depression* (2000), http://www.nimh.nih.gov/publicat/depression.cfm. *See* Barry Russell, *Bankruptcy Evidence Manual*, § 201.3 (2006 ed.) ("Under [Federal Rule of Evidence] 201(f), judicial notice may be taken at any stage of the proceeding, including by an appellate court."); *Hertzel v. Educ. Credit Mgmt. (In re Hertzel)*, 329 B.R. 221, 231-33 (B.A.P. 6th Cir. 2005). Also available through the NIMH is an article from March of this year which summarizes:

> Results of the nation's largest depression study show that one in three depressed patients who previously did not achieve remission using an antidepressant became symptom-free with the help of an additional medication and one in four achieved remission after switching to a different antidepressant.

Nat'l Inst. of Health, *New Strategies Help Depressed Patients Become Symptom-Free* (2006), http:www.nih.gov/news/pr/mar2006/nimh-22.htm.

    As for the second prong of the *Brunner* test, the debtor's testimony and demeanor at trial were demonstrative identification of her problems and explanation of how her condition, major depression, will impair her ability to work in the future. The debtor's exhibits at tabs 16 and 18 through 21 from Bluegrass Comprehensive Care Center accurately reflected the debtor's diagnosis as testified by her at trial. Certainly her difficulties are beyond her control. Additional circumstances indicating that the debtor's current state of financial affairs is likely to persist for a significant portion of the repayment period include her age and the age of her children; her family history; her

demeanor on the stand; that she did not obtain a degree and in the past has had only low-paying jobs; that although she has worked with a physician for the last year and a half and her condition is improved, she is not symptom-free; and that she is female and a single parent.

The debtor's daughter will be eighteen years old in two years. However, even though at that time the debtor's daughter either can be independent from the household or an adult contributor to it, the debtor's son is only two years old. Both children are in good health and have no disabilities. Nevertheless, any expense for medical care–whether a physical exam required before participation in a school activity or treatment for a broken bone–would be difficult for the debtor to manage. Although the debtor's daughter is covered by medical insurance through the child's father, the debtor's son is not because of the expense of that insurance. The debtor's son is not covered by any medical insurance.

A change in living situation would mean additional expenses and requiring some money up-front. For example, security deposits for utilities likely would be required. Furthermore, the debtor would have transportation expenses either as maintenance, and ultimately replacement, of her sixteen-year-old automobile or as public transportation. In addition, if required to work outside of her home, she probably would have child care expenses for her son.

As for the third prong of the *Brunner* test, the debtor has shown good faith efforts to repay the loan. Although her efforts to repay the obligation were minimal, they were at a sacrifice, either by borrowing the money from a family member or by foregoing payment of other bills. She obtained a deferment or forbearance as long as available

and learned about the options of consolidation and enrollment in the ICRP.  *See Hertzel v. Educ. Credit Mgmt. (In re Hertzel)*, 329 B.R. 221, 233 (B.A.P. 6th Cir. 2005) (finding that good faith does not depend solely upon the debtor's attempts at repayment of student loans, but turns on other considerations).  Consolidation is not an option because the debtor has defaulted on her student loans.  The ICRP is not a reasonable alternative for the debtor even if she made monthly payments at 20% above the poverty line, since interest would be compounding and ultimately she would have a tax consequence.  *See Educ. Credit Mgmt. v. Barrett (In re Barrett)*, 337 B.R. 896, 903-04 (B.A.P. 6th Cir. 2006) (finding where there is no reasonable likelihood the debtor could ever repay the student loan debt, the ICRP is not a reasonable alternative.)  Furthermore, given that the debtor's son presently is two years old, during the twenty-five year period contemplated by the ICRP, when her son legally becomes an adult at age eighteen, the debtor will be fifty-seven years old and will have nine years remaining on the ICRP, making her sixty-six at the end of the twenty-five year period.  Under these circumstances, the ICRP is not a reasonable alternative.

It is admirable that the debtor has been unwilling to apply for government assistance in the form of public housing, food stamps, and health benefits.  However, she certainly appears to be an appropriate candidate for such benefits and has made no effort to obtain certain of this assistance.  Furthermore, having this assistance would seem to be in the best interest of her children.  It is notable that according to the debtor's Social Security statement at tab 38 she could receive $595 per month in disability benefits at this time.  However, it also must be noted that she would have to be declared totally and permanently disabled in order to receive this amount.

The debtor's work product not only in her main bankruptcy case but also in this adversary proceeding is commendable. An example is her Trial Brief at tab 6 and filed as Document # 31. The court makes this observation not to punish the debtor for producing quality work but rather to encourage her future efforts at employment. Obviously she is intelligent and possesses many admirable, and marketable, qualities which can assist her along with the "leg up" of any discharge of debt in bankruptcy.

Pursuant to its powers codified in 11 U.S.C. § 105(a), a bankruptcy court may "fashion a remedy" short of total denial or total discharge of a student loan debt, thus permitting the debtor to satisfy his or her obligation while obtaining the benefits of bankruptcy. *Tenn. Student Assistance Corp. (In re Hornsby)*, 144 F.3d 433 (6th Cir. 1998). In *Miller v. Penn. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 622 (6th Cir. 2004), the Sixth Circuit Court of Appeals clarified that grant of a partial discharge can be made only upon showing of undue hardship with regard to the amount discharged. Although a bankruptcy court may grant partial discharge by its equitable powers, the grant must be with a finding of undue hardship while applying the *Brunner* test. *Tirch*, 409 F.3d at 680.

The court concludes that the debtor has satisfied all three prongs of the *Brunner* test and that requiring her to repay the entire amount owed to CAN will impose an undue hardship on her and her dependents, specifically, that to require the debtor to pay interest and collection costs will impose an undue hardship on her and her dependents. Therefore, the debtor's student loan debt to CAN is discharged except for $20,565.53, the original principal amount of the debtor's student loans. In addition, this amount will not bear interest and any repayment is subject to the ICRP with full

discharge and no tax implications at the end of the twenty-five year period.

Judgment in accordance with this memorandum opinion will be entered separately.

Copy to:

Lisa L. Gobin
Dean A. Langdon
Heather G. Pennington

13

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott*
**Bankruptcy Judge
Dated: Monday, May 15, 2006
(jms)**